BRIAN S. KABATECK, SBN 152054
RICHARD L. KELLNER, SBN 171416
KABATECK BROWN KELLNER LLP
350 South Grand Avenue, 39th Floor
Los Angeles, California 90071-3801
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

DARREN T. KAPLAN (Admitted *Pro Hac Vice*)
GREGORY E. KELLER (To be admitted *Pro Hac Vice*)
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476

SHAWN KHORRAMI, SBN 180411
LAW OFFICES OF SHAWN KHORRAMI
14550 Haynes Street, Third Floor
Van Nuys, California 91411
Telephone: (818) 947-5111
Facsimile: (818) 947-5121

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ADVANCED INTERNET TECHNOLOGIES, INC., a North Carolina corporation, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>vs.<br>GOOGLE, INC., a Delaware Corporation, and DOES 1 through 100, Inclusive,<br>Defendants. | Case No. 5:05 –cv-02885 RMW<br>**E-FILING**<br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR STAY**<br>Judge: Hon. Ronald M. Whyte<br>Date Comp. Filed: July 17, 2005<br>Trial Date: None Set |
| STEVE MIZERA, an Individual, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>vs.<br>GOOGLE, INC., a Delaware Corporation, and DOES 1 through 100, Inclusive,<br>Defendants | |

Plaintiffs Advanced Internet Technologies, Inc. ("AIT") and Steve Mizera ("Mizera") submit the following memorandum of points and authorities in opposition to defendant Google, Inc.'s ("Google") Motion for Stay.



Dockets.Justia.com

## MEMORANDUM OF POINTS AND AUTHORITIES

Four days after AIT filed its motion for class certification, Google has filed an administrative motion to stay this action case based upon a proposed class action settlement it negotiated in an Arkansas state court proceeding entitled *Lane's Gifts and Collectibles, LLC, et al. v. Yahoo! Inc., et al.* (Miller County, Ark., Case No. Civ-2005-52-1)("*Lane's Gifts*"). Google's motion is procedurally defective,[1] and is not supported by good cause.

The proposed class action settlement that Google has negotiated with *Lane's Gift's* attorneys has all the hallmarks of a "reverse auction" settlement, and it is speculative (at best) to suggest that it will be finally approved. From statements made by Google and *Lane's Gift's* attorneys to the media, the proposed settlement amounts to this: (a) rather than pay cash or provide any meaningful relief to the class, Google has agreed to waive a 60 day contractual period contained in its customer's contracts to challenge its overcharging practices; (b) in exchange, its customers will have an opportunity to directly challenge with Google improperly charged "invalid clicks" and (instead of cash) receive credits for future online advertising in an amount that will be capped at $90 million minus any payments made to *Lane's Gift* attorneys; and (c) *Lane's Gift's* attorneys will receive ***cash***, probably in a sum approaching $30 million. (Kellner Decl., para. 6.)

What Google fails to mention, however, is that AIT and its counsel were excluded from any settlement negotiations (Kellner Decl., para. 7), and that ***from the outset, the Lane's Gift action was jurisdictionally defective and subject to dismissal at any time***.[2]

In an effort to divert the Court's attention from the collusive nature of its proposed settlement, AIT offers the spurious accusation that AIT is prosecuting a "copycat" class action in this Court to the *Lane's Gift* action. (Google Mot., p. 1.) Nothing could be further from the truth. AIT has the only properly venued class action, and Google has a pending, seemingly unassailable motion to dismiss the

---

[1] Google's motion to stay this action must be denied because it was not filed as a properly noticed motion. Google maintains that it can request a stay under the guise of Local Rule 7-11 – which is limited to "administrative motions." This is not an administrative motion, which Local Rule 7-11 defines as motions such as those "to exceed applicable page limitations or motions to file documents under seal." Instead, Google asks this Court to cede jurisdiction of this case to an Arkansas state court. For that kind of relief, Google must file a properly noticed motion that affords AIT a fair and full opportunity to respond. Google's motion must be denied in all respects.

[2] *Lane's Gifts* was filed in the Circuit Court of Miller County, Arkansas on February 4, 2005.

*Lane's Gift* action based upon the fact that the putative class (including the class representatives) entered ***standardized contracts*** that require adjudication of disputes ***in Santa Clara County, California***. (Kellner Decl., para. 4.) As Google cogently argues in its pending motion to dismiss the *Lane's Gift* action, Arkansas law abides by contractual forum selection clauses – unless it would effectively deprive the litigants of their fair day in court. (*See*, Exhibit A, at p. 4, citing *BAAN, U.S.A. v. USA Truck, Inc.*, 82 Ark.App. 202, 206 (2003).) Google also acknowledges in its pending motion (as it must) that this Court would provide the putative class with a fair forum to adjudicate the class action allegations. (*See* Exhibit A, at p. 5.) The hearing on Google's motion was scheduled to be heard in July 2006. In the absence of a quick settlement, the *Lane's Gift* action was destined for dismissal.

In the AIT action, Google finds itself in an extremely precarious position. As demonstrated in AIT's pending motion for class certification, AIT represents a putative class comprised of tens of thousands of advertisers who participate in Google's AdWords program by entering into on-line form contracts with Google for United States advertising. The on-line ***form*** contracts ***all provide*** that AdWords advertisers will not be charged for "invalid clicks."[3] Since Google maintains that it employs the same computerized programs and filters to ostensibly detect "invalid clicks" on a ***system-wide basis***, class certification appears assured because: (a) the same form contracts terms provide that class members will not be charged for "invalid clicks"; and (b) Google's alleged systemic attempts to prevent the class from being charged for invalid clicks apply to all members of the class. *See, Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D.Ga. 1983)("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such"); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

AIT has conducted substantial discovery in this action, including the review of hundreds of thousands of pages of documents and the deposition of the Google employee in charge of invalid click detection, and has filed a compelling motion for class certification. (Kellner Decl., para. 8.) Meanwhile, the *Lane's Gift* action has languished on the precipice of dismissal with the attorneys for

---

[3] Google defines "invalid clicks" as including clicks created by "automated tools, robots or other deceptive software" and "manual clicks intended to increase [AdWords Advertisers'] advertising costs

*Lane's Gifts* having failed to examine a single Google document or depose a singe Google witness.

In reality, Google seeks to forestall and circumvent the class certification proceedings in the only venue it claims is proper – this Court. By excluding AIT and its experienced class counsel in negotiations for a settlement for the significant claims in these cases, Google has excluded from the negotiating process the one plaintiff with substantial negotiating leverage and the only plaintiff who is litigating an action in the proper contractual venue. The result is predictable – a "global" settlement that pays the attorneys with "millions of dollars," but leaves the class with virtually no relief.

The proposed settlement in *Lane's Gifts* has all the hallmarks of a "reverse auction," As described in *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002), a "reverse auction is:

> "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant. *Blyden v. Mancusi*, 186 F.3d 252, 270 n. 9 (2d Cir.1999); *Coffee*, supra, at 392; *Samuel Issacharoff, "Governance and Legitimacy in the Law of Class Actions*," 1999 Sup.Ct. Rev. 337, 388; *Marcel Kahan & Linda Silberman, "The Inadequate Search for 'Adequacy' in Class Actions: A Critique of Epstein v. MCA, Inc.*," 73 N.Y.U. L.Rev. 765, 775 (1998); John C. Coffee, Jr., "Class Wars: The Dilemma of the Mass Tort Class Action," 95 Colum. L.Rev. 1343, 1370-73 (1995). The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line--the sum of the settlement and the attorneys' fees--and not the allocation of money between the two categories of expense."

Google is seeking this Court's aid in the reverse auction process by staying the only action competing with the "winner" of the reverse auction.

If it is likely that the *Lane's Gifts* action would have been dismissed in the Arkansas state court, why would Google negotiate a settlement agreement with the Arkansas attorneys who brought the jurisdictionally defective *Lane's Gift* action? The reports of the settlement that have been leaked by Google and the *Lane's Gift's* attorneys provide the answer. Google has managed to negotiate a settlement in which it will pay nothing to the class.

The stock analysts have rightly viewed the proposed settlement as a financial bonanza for Google. (Exh. C.) The web advertising industry itself has also recognized the settlement as being extremely favorable to Google and less than favorable to Google's advertisers. By way of example, John Battele wrote on his influential SearchBlog that the settlement was a "major victory for Google."

---

or to increase profits for website owners hosting [AdWords customers'] ads."

[Post from SearchBlog annexed hereto as Exhibit D.] Search Engine marketing consultant Joe Holcomb is quoted in the *New York Post* to the effect that "Google is getting out of this on the cheap." [Article annexed hereto as Exhibit E.]

The industry is quickly realizing that the proposed settlement offers a paltry amount in comparison to the amount of revenue that Google has actually derived from charging advertisers for fraudulent clicks. The search advertising industry is well aware of a study conducted by Incubeta.com and reported by MarketingExperiments.com in 2005 which found that Google failed to detect and credit between 8% and 29.5% of the total clicks in three separate Google advertising campaigns. [*See* "Documented Click Fraud in Three Google AdWords Campaigns" at page 5 of the document annexed hereto as Exhibit B.] Google's reported revenue from pay-per-click advertising in 2005 was approximately $6 billion, so applying the same percentages for invalid clicks paid by the class to Google range **between $480 million and $1.7 billion in 2005 alone**. In fact, dozens of large customers of Google have already contacted counsel for AIT expressing concern about the proposed settlement. (Kellner Decl., para. 13.)

Significantly, the credit for future advertising portion of the proposed settlement effectively strips the putative class of the benefit of having its attorneys determine on a class-wide basis the percentage of "invalid click" billing that has taken place. Instead, the putative class will apparently make the same applications in a vacuum (without any meaningful discovery or disclosure) that they were previously able to make when they suspected they were charged for invalid clicks. In other words, the class will be in a worse position than they were in before the filing of the class action, where they had a contractual right to demand ***cash*** refunds of invalid click charges.

Courts have held that "the moving party bears a heavy burden to show why a stay should be granted absent statutory authorization . . . ." *Coastal (Bermuda) Ltd. v. E.W. Savbolt & Co.*, 761 F.2d 198, 204 n. 6 (5th Cir. 1985); see also *Sierra Rutile Ltd. v. Katz.*, 937 F.2d 743, 750 (2nd Cir. 1991) ("the movant bears a heavy burden of showing necessity for the stay"). Rule 1 of the Federal Rules of Civil Procedure provides that AIT is presumptively entitled to "secure the just, speedy, and inexpensive determination of [its] action." Google's suggestion that principles of judicial comity require that this action be stayed is without merit. The mere possibility of a preclusive effect in the

future is not sufficient to warrant a stay. *See Sandpiper Village Condo. Ass'n., Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 844 (9th Cir. 2005) (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 232 (1922)).

Google misconstrues *Sandpiper Village Condo*, which involved a federal court's interest in ensuring that a federal class action settlement not be circumvented by a subsequent settlement in a parallel state court proceeding. Here, contrary interests are invoked. Google is seeking to enter a collusive settlement with attorneys in a jurisdictionally defective state court action, in order to circumvent a federal class action.[4]

It has long been the law that "if there is even a fair possibility" that a requested stay will prejudice the nonmoving party, the applicant "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). The Ninth Circuit has reaffirmed that "[i]f a stay['s] . . . term is indefinite, we require a greater showing to justify it." *Hoeun Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000). Google fall far short of this standard.

AIT and the putative class will be prejudiced if the class certification motion is not permitted to go forward. While Google may want to avoid this Court's consideration of the class certification motion, it has not provided good cause for a stay.[5]

Google's motion should be denied in all respects.

---

[4] In this regard, Google has truly boxed itself into a corner. By trying to pass through the "collusive" settlement in Arkansas, Google has necessarily taken the position that class action treatment is appropriate for the adjudication of the putative class' claims that Google breached its contractual obligation to no charge for "invalid clicks." *Bollard v. Martin*, 349 Ark. 564 (2002).

[5] Google makes the absurd argument that it needs to conduct substantial discovery in connection with its opposition to the motion for class certification. This argument is a complete "red herring." First, by virtue of entering a settlement agreement in Arkansas in which it tacitly acknowledges that class treatment is appropriate for the adjudication of a virtually identical class action claims, Google will be hard-pressed to formulate any opposition to AIT's motion for class certification. Second, because the only class representative that is being proffered in the certification proceeding is AIT, Google's discovery will probably be limited to the deposition of AIT and document requests. Google's opposition is due on April 3, 2006. Accordingly, it is doubtful that Google will can or will serve any additional document requests. (See Kellner Decl., para. 14.)

Dated: March 13, 2006

Respectfully submitted,

KABATECK BROWN KELLNER LLP

By: /s Richard L. Kellner
RICHARD L. KELLNER

And CHITWOOD HARLEY HARNES LLP and THE LAW OFFICES OF SHAWN KHORRAMI, Attorneys for Plaintiffs